IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARIFA A. YAMBA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-37 |
| | ) | |
| v. | ) | Magistrate Judge Bissoon[1] |
| | ) | |
| NATE HARPER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Defendants' Motion for Summary Judgment (Doc. 22) will be granted in part and denied in part, as described below.

### BACKGROUND

In this Section 1983 action, Plaintiff Sharifa A. Yamba has sued the City of Pittsburgh, its Chief of Police, Nate Harper ("Chief Harper"), and Police Officer Daniel Zeltner ("Officer Zeltner"), based on events that transpired on August 23, 2007. *See generally* Am. Compl. (Doc. 3). At approximately 1:45 a.m., Officer Zeltner subjected Plaintiff to a traffic stop because a purported remote-access search of a Penn Dot database revealed that Plaintiff's license plate was registered to a different vehicle. *See* Defs.' Facts (Doc. 25) at ¶ 9; Pl.'s Facts (Doc. 27) at ¶ 9. Plaintiff was arrested for driving a vehicle with an altered document, and she was transported to the County Jail, where she remained until her release at 7:00 a.m. that same day. *See* Defs.' Facts at ¶ 12; Pl.'s Facts at ¶ 25.

---

[1] By consent of the parties, the undersigned sits as the District Judge in this case. *See* Consent forms (Docs. 9 & 10).

Plaintiff was scheduled for a preliminary hearing on August 28th, but before the hearing, Officer Zeltner telephoned Penn Dot and discovered that Plaintiff's registration was, in fact, valid. *See* Pl.'s Facts at ¶¶ 28-29; Defs.' Br. (Doc. 24) at un-numbered pg. 4. As a consequence, the criminal charge against Plaintiff was withdrawn. *See* Pl.'s Facts at ¶ 28.

## ANALYSIS

In large part, Plaintiff's claims are premised on the notion that City police officers' unprompted "running" of license plates through the Penn Dot database is unconstitutional. *See generally* Pl.'s Opp'n Br. (Doc. 27) at un-numbered pgs. 27-29, 30-32. Federal courts have recognized, however, that law enforcement officers' "running" of license plates does not violate the United States Constitution. *See, e.g.*, U.S. v. Ellison, 462 F.3d 557, 561-63 (6th Cir. 2006) ("a motorist has no reasonable expectation of privacy in the information contained on [her] license plate under the Fourth Amendment") (collecting cases); U.S. v. King, 2007 WL 4233585, *4 (D. Del. Nov. 29, 2007) ("[t]here is no reasonable expectation of privacy in a license plate number . . . displayed in plain view, and it is not illegal for a police officer to use license plate information to conduct a check on the vehicle's ownership and registration") (citations omitted); *see also* Albert v. Schwartz, 2006 WL 565684, *1 n.3 (3d Cir. Mar. 9, 2006) (summarily affirming district court's conclusion that law enforcement officers' "running [of plaintiff's] license plate number" did not "constitute[] an invasion of privacy . . . under the Constitution") (citation omitted).

Moreover, Officer Zeltner's reliance on Penn Dot's information, only later determined to be erroneous, entitles him to qualified immunity. *See* Butz v. Economou, 438 U.S. 478, 507

(1978) (government officials "will not be liable for mere mistakes in judgment, <u>whether the mistake is one of fact</u> or one of law") (emphasis added).[2]

Somewhat relatedly, Plaintiff has not introduced evidence that Defendants' practice of "running" plates was, or ever has been, targeted at people in a protected class. *Cf. generally* Pl.'s Opp'n Br. (suggesting that Defendants' policy violates Equal Protection clause); *see also* discussion *infra* (rejecting equal protection claims with respect to Plaintiff's specific treatment).

Finally, Plaintiff cannot survive summary judgment regarding her claims against Chief Harper or the City of Pittsburgh, because those entities' purported liability is restricted to their acquiescence in the plate-running practice/policy. *Compare* Pl.'s Resp. to Defs.' Facts at ¶ 31 (admitting that Chief Harper was not "personally involved" in August 23rd incident) *with* <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005) (Section 1983 liability "cannot be predicated solely [by] operation of *respondeat superior*"; government official "must have [had] personal involvement in the alleged wrongdoing") (citation to quoted source omitted); *compare also* Pl.'s Opp'n Br. at un-numbered pgs. 31-32 (restricting theory of municipal liability to Defendants' practice of running license plates) *with* discussion *supra* (concluding that Plaintiff has failed to establish that practice is unconstitutional).

---

[2] Plaintiff cannot establish that Officer Zeltner made a mistake of law in concluding that the information provided by Penn Dot, if accurate, supported Plaintiff's arrest and criminal charge. To the extent that Plaintiff claims Officer Zeltner acted unreasonably in relying on the accuracy of Penn Dot's information, moreover, the Court summarily rejects this assertion. *See, e.g.*, <u>Caceres v. Port Auth. of N.Y. & N.J.</u>, 646 F. Supp.2d 412, 428 (S.D.N.Y. 2009) (qualified immunity appropriate where officers arrested plaintiff for driving with suspended registration based on DMV database records; for purposes of immunity, "[w]hether the DMV database [ultimately] was accurate is immaterial") (citations omitted).

The Court's rulings above notwithstanding, disputes of material fact remain regarding whether Officer Zeltner's traffic stop was supported by a "reasonable suspicion" that Plaintiff violated a traffic law. *See generally* Am. Compl. at Count I (alleging that Plaintiff was "[u]nlawful[ly] [s]top[ped]").

In this Circuit, "[the] reasonable suspicion standard applies to routine traffic stops." U.S. v. Delfin-Colina, 464 F.3d 392, 397 (3d Cir. 2006). "[Alt]hough reasonable suspicion is a generally undemanding standard, a police officer does have the initial burden of providing . . . specific, articulable facts to justify a reasonable suspicion to believe that an individual has violated [a] traffic law[]." *Id.* (citation to quoted source omitted). The absence of reasonable suspicion may support Section 1983 liability. *See* Elozua v. New Jersey, 2008 WL 370926, *5 (D. N.J. Feb. 11, 2008) ("[a]n unreasonable search and seizure claim under the Fourth Amendment may arise out of a traffic stop") (citation omitted).

Plaintiff has consistently maintained that Officer Zeltner pulled her over at approximately 1:45 a.m. on August 23rd. *See* Am. Compl. at ¶ 11; Pl.'s Dep. Tr. at 59-60 (filed under Doc. 27-1 at pgs. 32-33 of 128). Officer Zeltner, on the other hand, offers no specific indication regarding when the traffic stop occurred. *See generally* Defs.' Br. at un-numbered pg. 3 (stating only that incident occurred "in the early morning hours of August 23[rd]").[3] This is significant because the only evidence submitted by Defense counsel regarding Officer Zeltner's Penn Dot search(es) appears to indicate that they were conducted on "08/23/07 [at] 02:49" and "08/24/07 [at] 01:50." *See* Doc. 26-6 at pgs. 1 & 2 (emphasis added); *see also* Defs.' Facts at ¶ 9 (identifying referenced

---

[3] *Cf. also* Dep. Tr. of D. Zeltner at 17 (filed under Doc. 26-3 at pg. 5 of 25) (agreeing with Plaintiff counsel's assertion that incident occurred at "approximately 1:00 a.m.," "or sometime after 1:00 a.m.").

4

exhibit as "[a] copy of [the] terminal printout" reflecting Officer Zeltner's purported pre-stop database search).

The Court has no way of knowing whether the dates and times identified in Defendants' documentary evidence definitively establish when Officer Zeltner conducted his pre- or post-stop inquir(ies). Plaintiff contends that no pre-stop database search was conducted, however, and the timeline discrepancies identified by Plaintiff preclude the entry of summary judgment. *See generally* Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (on summary judgment, movant bears initial burden of showing absence of genuine issue of material fact, and, even where nonmoving party bears ultimate burden of proof, moving party must identify absence of evidence supporting nonmovant's case) (citation to quoted source omitted).

Although Plaintiff's traffic stop claim may proceed under the Fourth Amendment, the Court clarifies that she may not proceed under an equal protection theory. To establish such a claim, Plaintiff "must prove the existence of purposeful discrimination." Pollock v. City of Philadelphia, 2008 WL 3457043, *8 (E.D. Pa. Aug. 8, 2008) (citation to quoted source omitted). In order to survive summary judgment, Plaintiff is required to "provide affirmative evidence from which a jury could find that [she] has carried . . . her burden of proving [a] pertinent [discriminatory] motive." *Id.* (citation to quoted source omitted); *accord* Johnson v. Anhorn, 416 F. Supp.2d 338, 359 (E.D. Pa. 2006) (holding same within context of allegedly unlawful traffic stop).

Plaintiff has failed to identify any evidence upon which a jury reasonably could conclude that Officer Zeltner's traffic stop was motivated by race or gender. Officer Zeltner has testified that, before he approached Plaintiff's car window, he was unable to discern the identity of the

vehicle's occupant.  *See* Defs.' Facts at ¶ 4.  Although Plaintiff's counsel highlights Officer Zeltner's statement that he was able to see "a silhouette," this does refute the Officer's testimony indicating that he was unaware of Plaintiff's race or gender when he initiated the stop.

Plaintiff's counsel also relies heavily on the Police Department's written policies regarding vehicle stops, which purportedly required Officer Zeltner to know the occupant's race and gender before initiating the stop.  *See* Pl.'s Opp'n Br. at un-numbered pg. 21 of 35.  The Department's policies established nothing of the sort.  *See* Policies, eff. May 1, 1998, at § 3.4 (filed under Doc. 27-1 at pg. 104 of 128) (when officer makes traffic stop, he or she "shall notify [the Department, through] communications," of attendant details, such as "[t]he nature or reason for the stop," "[t]he location," "[a] description of the vehicle," "[t]he license number of the vehicle," "[t]he race, sex and number of occupants," and whether "back-up is requested or needed").[4]

Plaintiff last relies on her assertion that, throughout the course of Officer Zeltner's August 23rd shift, he arrested only two people and they were both black females.  *See* Pl.'s Opp'n Br. at un-numbered pg. 34 of 35.  Of course, this says nothing regarding the number of non-black, non-female individuals encountered by Officer Zeltner who engaged in similar presumed violations but were not arrested.  Plaintiff has not even begun to establish that similarly situated, non-protected individuals were treated differently.  *See* McCann v. Winslow Twp., 2007 WL 4556964, *10 (D. N.J. Dec. 20, 2007) (to state claim for equal protection,

---

[4] Nothing in the cited policies stated or implied that, before an officer could properly stop a vehicle, he or she must have been able to ascertain the race and/or gender of the vehicle's occupant(s).  *See id.*; *cf. also id.* at § 3.1 ("it is recognized that varying conditions, including . . . the urgency of making vehicle stops[,] may necessitate certain deviations from the following procedures").  Such a requirement would appear not only irrational, but a potential threat to public safety.  *Cf. generally* Northern Mariana Islands v. Yao, 2007 WL 2033993, *4 (D. N. Mar. I. Jul. 10, 2007) ("[a]n automobile is a dangerous instrumentality, [and] thus[,] traffic laws are necessary for the safety of the public") (citation omitted).

plaintiff must show that "similarly situated suspects of a different race violated the motor vehicle or traffic law and were not subject to the law's enforcement") (citations omitted), *aff'd*, 2008 WL 4900392 (3d Cir. Nov. 17, 2008).

In the end, Plaintiff's equal protection claims are founded on her and her father's personal beliefs that City police officers generally, and Officer Zeltner specifically, stopped African-American citizens because of their race.  *See* Defs.' Facts at ¶ 36 (when asked whether Plaintiff had knowledge that would lead her to believe that Officer Zeltner would not have stopped a white person under similar circumstances, her only response was, "I don't feel that he would [have]"); Pl.'s Facts at ¶ 31 (Plaintiff's father "believes [that] his daughter's stop was racially motivated because of his awareness through his research in multicultural relations and through teaching Pittsburgh Police Officers in the downtown Career Center of California University of Pennsylvania, that Pittsburgh Police do stop young black people, especially in Homewood[,] which has been designated a high crime area").  For the purposes of equal protection, however, "subjective belief[s] that defendants' actions were discriminatory" are insufficient to withstand summary judgment.  Brown v. Sales, 1998 WL 42527, *2 (10th Cir. Feb. 4, 1998) (citation to published authority omitted); *see also* Saellam v. Norfolk Southern Corp., 2008 WL 5286836, *10 (W.D. Pa. Dec. 19, 2008) (Ambrose, J.) (holding same within context of federal discrimination statute) (numerous citations omitted).

**CONCLUSION**

For all of the reasons stated above, Defendants are entitled to summary judgment on all of Plaintiff's claims, save those against Officer Zeltner for conducting an allegedly unreasonable traffic stop under the Fourth Amendment.[5]  The Court therefore enters the following:

## II.  ORDER

Defendants' Motion for Summary Judgment (**Doc. 22**) is **GRANTED IN PART** and **DENIED IN PART**, as described in the above Memorandum.  Furthermore, Defendants the City of Pittsburgh and Nate Harper are terminated as parties to this litigation.

IT IS SO ORDERED.


March 9, 2010                                                                      s\Cathy Bissoon
                                                                                            Cathy Bissoon
                                                                                            United States Magistrate Judge

cc (via email):

All Counsel of Record

---

[5] The parties have failed to address, and the Court therefore declines to consider, whether Officer Zeltner's traffic stop, if found unconstitutional, may permit Plaintiff to also recover against Officer Zeltner for Plaintiff's subsequent arrest and imprisonment.  It suffices to say that issues of material fact remain regarding whether Officer Zeltner possessed reasonable suspicion to stop Plaintiff.  If Officer Zeltner's traffic stop was constitutional, however, this would end the jury's inquiry, and Officer Zeltner would be entitled to the entry of judgment in his favor. *See* discussions in text, *supra* (granting summary judgment in favor of Defendants regarding all of Plaintiff's remaining claims).