# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARIFA A. YAMBA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-37 |
| | ) | |
| v. | ) | Magistrate Judge Bissoon |
| | ) | |
| NATE HARPER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

Defendant's Supplemental Motion for Summary Judgment (Doc. 30) will be granted for

the reasons described below.

**BACKGROUND**

On May 11, 2010, remaining Defendant Daniel Zeltner filed a Supplemental Motion for

Summary Judgment urging this Court to dismiss the remaining charge against him for

conducting an unreasonable traffic stop, which allegedly deprived Plaintiff of her Fourth

Amendment rights. To support his motion, Defendant has provided a personal affidavit, data

from the Pennsylvania Department of Transportation ("PennDOT"), and an affidavit from

Christine Mitchell, a City of Pittsburgh police officer trained to operate the database and

interpret the printouts from the Mobile Data Terminal ("MDT"), which received the data

remotely from the PennDOT database. This evidence[1] clarifies the timeline of events and

---

[1]In support of his instant Motion, Defendant has included printouts of the queries that the MDT in Defendant's police vehicle submitted to PennDOT as well as PennDOT's instantaneous responses (Doc. 34-1). These printouts replicate the exact information that appeared on the MDT

demonstrates that Defendant initiated a query of Plaintiff's license plate at 1:06 a.m., received a

response from PennDOT that the license plate had expired (and was a "dead plate") shortly

thereafter, and, after advising PennDOT at 1:08 a.m. of his intention to do so, subsequently

implemented the traffic stop of Plaintiff's vehicle.  Def.'s Appendix to Br. Supplemental

Summary Judgment at Ex. 2-4 (Doc. 34-5); Def.'s Affidavit at ¶¶ 2-8 (Doc. 33).

In response to Defendant's motion, Plaintiff has filed an opposition brief (Doc. 37),

as well as an affidavit (Doc. 37-1), indicating that, contrary to her previously filed Amended

Complaint, Statement of Facts, deposition, and prior Brief in Opposition to Defendants' Joint

Motion for Summary Judgment, Defendant stopped her at 12:45 a.m., not 1:45 a.m.  Pl.'s

Affidavit at ¶ 1 (Doc. 37-2); *see also* Am. Compl. at ¶ 11 (Doc. 3); Pl.'s Issues of Material Fact

at ¶ 9 (Doc. 27); Pl.'s Dep. at 59-60 (Doc. 27-1); Pl.'s First Opp'n Br. at un-numbered 4

(Doc. 27).  Plaintiff's instant brief in opposition to Defendant's supplemental motion makes no

mention of her revision to her prior averment, nor does her affidavit offer any explanation as to

why her recollection of the timing of the events has now changed.

## ANALYSIS

While Plaintiff's newly revised timeline directly conflicts with Defendant's (*compare*

Def.'s Supplemental Motion for Summary Judgment (Doc. 31) at 8, declaring that the running of

the plates "clearly occurred prior to the pullover" *with* Pl.'s Br. in Opp'n to Supplemental

---

screen in Defendant's vehicle.  The printouts reveal that the MDT ran a query of Plaintiff's
license plate, PA GJY3009, at 1:06 a.m. on August 23, 2007, which apprised Defendant that the
registration on the license plate of the vehicle Plaintiff was operating had expired (as indicated
by the "00-00") and that it belonged to a Pontiac rather than a Volkswagen, the make of the car
Plaintiff was driving.  *See generally* Appendix to Def.'s Br. Supplemental Summary Judgment,
Ex. 2 Affidavit of Officer Christine Mitchell (Doc. 34).

Motion for Summary Judgment (Doc. 37) at 8, claiming that "Plaintiff's vehicle was pulled over at 12:45 am"), her recent "revelation" cannot defeat summary judgment.

The Court of Appeals for the Third Circuit has held that "'a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony *without demonstrating a plausible explanation for the conflict*.'" *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 251 (3d Cir. 2007) (quoting *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004)) (emphasis added).[2] As the *Jiminez* Court explained, "[i]f a party who has [been] examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his or her own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* at 252. As a result, "if it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." *Id.* at 253.

Of particular relevance in this inquiry is the existence of corroborative evidence supporting Plaintiff's change in testimony. In determining whether a subsequent affidavit conflicting with earlier testimony creates a genuine issue of fact to defeat summary judgment, independent evidence must exist in the record to bolster the otherwise questionable affidavit. *Id.* at 254 (citing *Baer*, 392 F.3d at 625). Such evidence "may establish that the affiant was 'understandably' mistaken, confused, or not in possession of all of the facts" at the time the prior

---

[2] *See also Marathon Ashland Petroleum, LLC. v. Int'l Bhd. of Teamsters*, 300 F.3d 945, 951 (8th Cir. 2002) ( "It is well established that parties to summary judgment cannot create sham issues of fact in an effort to defeat summary judgment and that a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before . . . Otherwise, any party could head off summary judgment by supplanting previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment.") (citation to quoted authority omitted).

testimony was given, and the affidavit may be accepted if the affiant can "offer a 'satisfactory explanation' for the conflict between the prior [testimony] and the affidavit." *Id.* However, "[w]hen a party does not explain the contradiction between a subsequent affidavit and . . . prior [testimony], it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as . . . not creating an impediment to a grant of summary judgment." *Id.*

Moreover, multiple Third Circuit cases establish that blanket assertions of mistaken testimony, without additional substance corroborating the veracity of the revision, are insufficient to create a genuine issue of material fact. *Id.* at 254-255. In *Jiminez*, the defendant testified that he had never discussed his restaurant's policy of restraining unruly patrons with any member of the local police department. *Id.* at 254. Eight days prior to the plaintiffs' brief in opposition to a co-defendant's motion for summary judgment, the defendant provided an affidavit alleging that he did in fact have conversations with officers in the police department regarding this policy, an assertion that if accepted would have defeated the motion and reduced the defendant's exposure to further liability. *Id.* at 254-255. After investigating the record, neither the plaintiff nor the defendant himself could identify any officers with whom he had allegedly conversed, which led the district court to find that he had not offered an explanation for the conflict in testimony sufficient for the affidavit to present an issue of fact capable of defeating summary judgment. *Id.* at 255.

In *Baer*, the plaintiff filed an affidavit indicating that he "misspoke" in his prior deposition and that his subsequent recollection of his commercial interactions with the defendant was correct. *Id.*, 395 F.3d at 625. In reversing the trial court's ruling that the plaintiff's mere explanation of a "mistake" was insufficient to accept the affidavit as given, the Third Circuit

4

Court noted the existence of a letter in the record that directly corroborated the plaintiff's revised statement in his subsequent affidavit. *Id.* at 626. The court held that the plaintiff's "ability to point to evidence in the record that corroborate[d] his later affidavit alleviate[d] the concern that he merely filed an erroneous certification out of desperation to avoid summary judgment . . . and therefore the [trial] court should have analyzed the letter and the circumstances surrounding it and [the plaintiff's affidavit] when ruling on the summary judgment motion." *Id.*

In this case, Plaintiff has stated on multiple independent occasions that Defendant pulled her over at 1:45 a.m. on the morning of August 23, 2007. Am. Compl. at ¶ 11 (Doc. 3); Pl.'s Issues of Material Fact at ¶ 9 (Doc. 27); Pl.'s Br. in Opp'n to Defs.' Joint Motion for Summary Judgment at un-numbered 4 (Doc. 27); Pl.'s Dep. at 59-60 (Doc. 27-1). In all, Plaintiff affirmed the hour at which Defendant pulled her over on at least four separate occasions in the record.

In her instant opposition brief, however, Plaintiff has attached an affidavit summarily declaring: "In my deposition I stated that I was stopped by officer Zeltner at 1:45 am in error." Pl.'s Affidavit (Doc. 37-1). She offers no explanation for this "error," no explanation for why it was repeated on four separate occasions, and no explanation for why she found it necessary to address only the error made in her deposition but not elsewhere in the record. She also has failed to support her revised timeline with any new or existing corroborative evidence. Therefore, the Court finds that Plaintiff's revision of the time Defendant pulled her over, from 1:45 a.m. to 12:45 a.m., is unsubstantiated by the record and does not present a genuine issue of fact to defeat Defendant's motion for summary judgment. Consequently, Plaintiff's previous allegation that Defendant initiated the pullover at 1:45 a.m., and that this occurred *prior* to his running her

license plate, cannot be squared with the record evidence confirming that Plaintiff's license plate was run through PennDOT's database at 1:06 a.m.[3]

Given Defendant's clear and competent evidence regarding the timeline of events, and Plaintiff's inability to rebut it, Defendant is entitled to summary judgment on Plaintiff's sole remaining claim. *Compare* discussions *supra with* Mem. and Order dated Mar. 9, 2010 (Doc. 28) at 4-5, 8 (granting summary judgment in favor of Defendants on all of Plaintiff's claims and theories, save her "conten[tion] that no pre-stop database search was conducted"; disputes of material fact related to "the timeline [issue]," which has been resolved in Defendants' favor herein).

## II.  ORDER

Defendant's Supplemental Motion for Summary Judgment (**Doc. 30**) is **GRANTED**.

IT IS SO ORDERED.


June 8, 2010                                                    s\Cathy Bissoon
                                                               Cathy Bissoon
                                                               United States Magistrate Judge

cc (via email):

All Counsel of Record

---

[3] The MDT printouts also confirm that Plaintiff's driver's license, which Defendant could have obtained only *after* instituting the pullover, was run through PennDOT at 1:12 a.m.  Def.'s Affidavit (Doc. 33).